IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVIA PIVEN as Trustee for the Leonard Piven Trust UAD 05/21/81, derivatively on behalf of AON CORPORATION, | ) ) ) ) ) |
| Plaintiff, | ) |
| v. | ) No. 05 C 4619 |
| PATRICK G. RYAN, EDGAR D. JANNOTTA, JAN KALFF, LESTER B. KNIGHT, J. MICHAEL LOSH, R. EDEN MARTIN, ANDREW J. MCKENNA, ROBERT S. MORRISON, RICHARD NOTEBAERT, JOHN W. ROGERS, JR., CAROLYN WOO, GLORIA SANTON, MICHAEL D. O'HALLERAN, and DAVID BOLGER, | ) ) ) ) Judge Blanche M. Manning ) ) ) ) Magistrate Judge ) Arlander Keys |
| Defendants, | ) |
| AON CORPORATION, | ) |
| Nominal Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on plaintiff's motion to compel discovery from the defendants. For the reasons explained below, the Court denies the motion.

Background & Procedural History

This is a derivative action on behalf of Aon Corporation to recover damages allegedly caused to Aon by its directors and senior officers. Sylvia Piven, as Trustee of the Leonard Piven Trust UAD 05/21/81, sued Aon, its directors and senior officers, in her capacity as an Aon shareholder, alleging that the named defendants breached their fiduciary obligations to the company by

taking part in, and by allowing the company to take part in, conduct in breach of Aon's obligations to its clients and in violation of state and federal business and securities laws. In particular, Ms. Piven alleges that Aon, under the leadership of Patrick Ryan, engaged in a business that prioritized corporate profits over the best interests of its clients; Ms. Piven alleges that, instead of securing for its clients the best insurance products at the best prices, Aon secured for its clients the insurance products that would lead to the highest commissions for Aon.

If Ms. Piven's complaint is to be believed, those allegations appear to be grounded in fact. According to the complaint, in April 2004, New York State Attorney General Elliot Spitzer subpoenaed Aon and other insurance brokerage firms in connection with his investigation of the contingent commission practice. Although Aon was not initially the prime target of the investigation, Mr. Spitzer soon turned his attention to Aon, which, in the end, disclosed that it had, in fact, accepted contingent commissions. According to Ms. Piven's complaint, on March 3, 2005, Mr. Spitzer, together with the New York State Insurance Superintendent, the Attorneys General of Connecticut and Illinois, and the Illinois Acting Director of Insurance, sued Aon for engaging in improper business practices. The next day, Spitzer announced that the parties had settled the suit. As part

2

of the settlement, Aon agreed to pay $190 million to a fund for eligible policy holders and agreed to implement a series of structural and business reforms.

Meanwhile, after Mr. Spitzer initiated his investigation, but before he sued Aon, Ms. Piven made a demand on Aon's Board of Directors, as provided under Delaware law, to investigate allegations of wrongdoing. Ms. Piven's "Demand Letter," dated November 23, 2004, demands "under Delaware law that the Aon board of directors take the appropriate steps to provide for equitable and therapeutic relief, as well as retroactive damages, to remedy the breach of fiduciary duty, mismanagement and corporate waste . . . ." See Letter from Kenneth J. Vianale tp Aon Corporation dated November 23, 2004, p.1 (attached as Exhibit 1 to Plaintiff's Verified Complaint).

On December 10, 2004, Aon's Executive Vice President and General Counsel, D. Cameron Findlay, acknowledged Ms. Piven's demand and advised that the Board likely would not consider the letter before its January meeting. See Letter from D. Cameron Findlay to Kenneth J. Vianale dated December 10, 2004 (attached as Exhibit 2 to Plaintiff's Verified Complaint). After the Aon Board's January meeting, Mr. Findlay wrote to advise Mr. Vianale that the Board had considered Ms. Piven's demands, but that, in light of the ongoing investigation of issues raised by Mr. Spitzer, which would include an investigation of the issues

3

raised in Ms. Piven's Demand Letter, the Board intended to await the results of that ongoing investigation "before considering whether any additional actions are necessary at this time." See Letter from D. Cameron Findlay to Kenneth J. Vianale dated January 27, 2005.

On May 6, 2005, Mr. Findlay again wrote to update Ms. Piven on the status of her demands. In this last letter, Mr. Findlay reiterated that Aon and its Board had "engaged outside law firms to conduct a broad review of the matters under investigation by [New York Attorney General Eliot] Spitzer and other governmental authorities." See Letter from D. Cameron Findlay to Kenneth J. Vianale dated May 6, 2005, p. 1 (attached as part of Exhibit 2 to Plaintiff's Verified Complaint). He then advised Ms. Piven that, on February 22, 2005, another shareholder had filed a purported derivative action raising essentially the same claims as those asserted in Ms. Piven's Demand Letter. See id. Mr. Findlay advised that the plaintiff in that action had expressly alleged that a pre-suit demand on the Board would have been futile, that the Board strongly disagreed with that assessment, and that the Board intended to contest that allegation in the lawsuit. Id. And given all of this, Mr. Findlay advised,

> the Board has determined that it would not be a prudent expenditure of time and resources for [the Board] to conduct additional inquiry into the allegations raised in your letter. Because the Company will have to expend resources to defend against the Sherman plaintiffs' contention that demand to the Board is

4

futile, the Board believes that it is prudent first to
litigate that contention in the derivative action
before responding to the demands in your letter. The
Board will monitor the progress of the *Sherman*
litigation [the recently filed derivative action] and
will consider your letter at a later point in time, as
circumstances warrant.

*Id.*

Apparently unwilling to go along with the approach outlined in Mr. Findlay's letter, on July 14, 2005, Ms. Piven issued another demand letter to Aon. In her letter, she demanded that, consistent with Delaware law, 8 Del. C. §220, she be permitted to inspect whatever books and records Aon had in connection with the Board's investigation of her previous Demand Letter. *See* Letter from Sylvia Piven to Aon Corporation dated July 14, 2005 (attached as Exhibit 3 to Plaintiff's Verified Complaint). Specifically, Ms. Piven asked the company to produce the following:

> 1. All minutes, records, documents and emails of Aon Corp. ("Aon" or the Company") in connection with the investigation by the Board of Directors (the "Board") of Aon into the subjects raised by the letter from Kenneth J. Vianale, dated November 23, 2004, to the Aon Board (the "Demand Letter").
>
> 2. All minutes, records, documents and emails of Aon evidencing the Board's consideration of any facts adduced during the Board's investigation into the subjects raised by the Demand Letter.
>
> 3. All minutes, records, documents and emails of Aon in connection with Aon's and/or its subsidiaries' and affiliates' business practice of using contingent commissions, as detailed in the Demand Letter.
>
> 4. All agreements entered into by the Company,

5

and/or its subsidiaries' and affiliates', that are commonly referred to formally or informally as one or more of the following: contingent commission agreements, placement service agreements, market service agreements, override agreements, compensation for services to underwriters, and/or clawback agreements.

    5. All minutes, records, documents and emails of Aon produced to the office of the New York State Attorney General Elliot Spitzer ("Spitzer").

    6. All minutes, records, documents and emails of Aon in connection with the action brought against the Company by Spitzer, dated on or about March 3, 2005.

    7. All minutes, records, documents and emails of Aon in connection with the settlement by the Company of the Spitzer action, dated on or about March 4, 2005.

    8. All minutes, records, documents and emails of Aon reflecting the nature, amount and payment of fines, penalties and legal fees incurred in connection with the Spitzer action as well as any other action or matter implicating the Company's practice of using contingent commissions agreements, placement service agreements, market service agreements, override agreements, compensation for services to underwriters, and/or clawback agreements.

    9. All Aon insurance agreements that purport to indemnify the acts or omissions of the members of the Board from January 1, 2001 to the present.

    10. All Aon documents reflecting the identity, background, and employment title held (if applicable) of each member of the Board from January 1, 2001 to the present.

    11. All Aon documents in connection with the compensation of the members of the Board and the Company's senior executive officers.

See Exhibit B to Letter from Sylvia Piven to Aon Corporation dated July 14, 2005.

Aon objected to Ms. Piven's request. By letter dated July

6

25, 2005, Paul A. Henmueller, Senior Litigation Counsel in Aon's Law Department, advised Ms. Piven that, in the company's view, many of her requests were "extremely broad in nature" and generally failed to satisfy the requirements of §220. See Letter from Paul A. Henmueller to Kenneth J. Vianale dated July 25, 2005 (attached as Exhibit 4 to Plaintiff's Verified Complaint). Mr. Henmueller advised that, despite these deficiencies, the company was willing "to make certain information available for inspection, conditioned upon execution of an appropriate confidentiality agreement"; he advised her to contact him if she wished to discuss the matter further. Id.

Shortly thereafter, on August 12, 2005, Ms. Piven filed this lawsuit, alleging breach of fiduciary duty to properly operate Aon, gross negligence, abuse of control, gross mismanagement, breach of contract, waste of corporate assets, unjust enrichment, and failure to comply with 8 Del. C. §220, the Delaware statute concerning a shareholder's right to inspect corporate books and records. Among other things, her complaint sought an order requiring Aon to permit the requested inspection immediately.

The defendants moved to dismiss the complaint in its entirety; alternatively, they asked the court to stay proceedings pending the resolution of an earlier-filed Illinois state court derivative action. The defendants' motion is fully briefed and pending before Judge Manning, the district judge to whom this

case is assigned.

After filing her complaint, Ms. Piven attempted to proceed with discovery. On October 17, 2005, she served a request for production of documents seeking the following:

> 1. All minutes, records, documents and emails of Aon Corporation . . . relating to or evidencing any work done by the Board of Directors . . . of Aon to investigate or analyze the subjects raised by [Ms. Piven's Demand Letter];
>
> 2. All minutes of meetings of the Board of Aon, including any committee of the Board, at which the Board or committee discussed or considered the Demand Letter;
>
> 3. Any resolution of the Board of Aon, or similar document, appointing a special committee or similar group or entity to consider the Demand Letter.
>
> 4. All minutes, records, documents and emails evidencing or constituting any conclusions by the Board of Aon regarding the Demand Letter.
>
> 5. All Aon insurance contracts or policies that cover the liability of the Board of Aon and defendants for this action.
>
> 6. All documents from insurance carriers regarding a disclaimer or reservation or rights concerning coverage for this action.
>
> 7. All documents referring to or evidencing any business, professional, financial, social, or familial relationship between and among any of the defendants in this action and members of the special committee, if appointed, and the Company's senior executive officers. (A summary document will suffice to meet this request.)

See Plaintiff's First Request for Production of Documents (attached as Exhibit A to Plaintiff's Motion to Compel Discovery).

8

In response to these requests, the defendants raised a number of general objections; they also argued that the requests were:

> premature, irrelevant and improper. The Board has not rejected plaintiff's demand; as such, plaintiff lacks standing to assert the rights of Aon to seek discovery in this matter. The request is also improper to the extent that it is promulgated in connection with plaintiff's §220 demand, since it seeks the ultimate relief being sought by that claim, and is overly broad and unduly burdensome to the extent that plaintiff already possesses documents that provide summaries of the Board's consideration of the Demand Letter responsive to this request.

See Defendants' Response to Plaintiff's First Request for Production of Documents (attached as Exhibit D to Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel Discovery). Shortly after receiving the defendants' response to the document requests, Ms. Piven filed the motion to compel that is now before the Court.

## Discussion

Unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Fed. R. Civ. P. 26(b)(1). Where a party objects to the discovery or otherwise fails to comply with a discovery request, Federal

9

Rule of Civil Procedure 37 allows the party seeking the discovery, upon reasonable notice, to apply for an order compelling such discovery. Fed. R. Civ. P. 37. And the party objecting to the discovery has the burden of demonstrating that its objections are proper and that discovery should not be permitted. *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 337 (N.D. Ill. 2005)(citing *Dove v. Atlantic Corp.*, 963 F.2d 15, 19 (2nd Cir. 1992); *Williams v. Sprint/United Management Co.*, 2005 WL 731070 at *3 (D. Kan. 2005); *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997)). The Court has broad discretion in deciding whether discovery should be compelled. *See, e.g., Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996).

The Court turns first to the defendants' argument that the plaintiff's motion "puts the cart before the horse" in that it seeks to compel the production of certain documents, when the merits of the lawsuit involve whether plaintiff is entitled to receive those documents in the first instance. Generally speaking, the prevailing view seems to be that, in a derivative action, discovery should not be allowed during the pendency of a motion to dismiss. *See In re First Bancorp Derivative Litigation*, 407 F.Supp.2d 585, 586-87 (S.D. N.Y. 2006); *Darquea*

v. *ITT Educational Services, Inc.*, No. 1:04CV0380-DFH-TAB, 2005 WL 280345, at *5-6 (S.D. Ind. Feb. 2, 2005)(civil discovery is not readily available in derivative actions); *Khanna v. Covad Communications Group, Inc.*, No. 20481-NC, 2004 WL 187274, at *5 (Del Ch. Jan. 23, 2004)(discovery should not be allowed during the pendency of a motion to dismiss a derivative action). This would seem to make sense in light of the unique nature of a derivative action and in light of the threshold showing a plaintiff must make before being able to pursue such an action.

Under some circumstances, courts have allowed discovery to proceed despite the pendency of a motion to dismiss. But that seems to be true only when the motion to dismiss is not dispositive of the entire complaint, or where it is clear, based upon the parties' conduct, that the defendants have attempted to stonewall or to use the rules of procedure as a sword to stymie the plaintiff's efforts to uncover wrongdoing. *See, e.g., Khanna*, 2004 WL 187274, at *5 (citing *Taubenfeld JT v. Marriott International*, 2003 WL 22682323 (Del. Ch. Oct. 28, 2003).

Here, the motion to dismiss is dispositive. And, at this point, the Court cannot say whether the parties' motives and intentions for proceeding as they have are pure or motivated by some abuse of the derivative action rules – indeed, that is a question for Judge Manning to consider in connection with the defendants' motion to dismiss. Until that question is answered,

11

however, the Court agrees with the defendants that discovery should not be compelled. Once that ship has sailed, it cannot be undone - an important consideration, especially because the motion is already fully briefed and because there appears to be no sense of urgency to the discovery. There is no allegation that, absent immediate Court intervention, documents may be destroyed or evidence may be compromised. And given that Mr. Spitzer has shined his bright light on the company and the Board, such conduct would seem to be extremely unlikely.

Ms. Piven relies, in part, on *In re FirstEnergy Shareholder Derivative Litigation*, 219 F.R.D. 584 (N.D. Ohio 2004), to support her position that discovery should proceed. In that case, the plaintiffs - like Ms. Piven - asserted derivative claims brought into federal court pursuant to diversity jurisdiction under 28 U.S.C. §1332(a)(1). And, in that case, the defendants, like the defendants here, sought to avoid discovery. But the defendants - unlike those here - sought a stay based upon a *contemplated* motion to dismiss, one that had not yet been filed, and they argued that the stay was appropriate under the automatic stay provision in the PSLRA. The court - correctly - determined that the plaintiffs' claims fell outside the scope of the PSLRA's stay provision. 219 F.R.D. at 586.

Here, the Court is not being asked to decide whether the PSLRA stay provision applies to the plaintiff's claims - it quite

clearly does not. Rather, the Court is being asked to decide whether, under the particular circumstances presented here – where there are parallel state court derivative actions proceeding, where there is a fully-briefed motion to dismiss or stay the action pending before the district court, where there is no allegation that evidence or documents may be compromised or destroyed, and where the facts of the case suggest that dismissal for lack of standing is a distinct possibility in light of Judge Manning's decision in *Maccoumber v. Austin*, No. 03 C 9405, 2004 WL 1745751 (N.D. Ill. Aug. 2, 2004) – the Court should exercise its discretion to delay the disclosure and production of documents. On balance, the Court is persuaded that it should. Accordingly, the Court will deny Ms. Piven's motion to compel.

## Conclusion

For the reasons explained above, the Court denies Ms. Pivens' motion to compel discovery [Docket #43].

Dated: March 1, 2006

ENTER:

*/s/ Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge