# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SYLVIA PIVEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) No. 05 CV 4619 |
| PATRICK G. RYAN, et al., | ) Judge Blanche M. Manning |
| | ) |
| Defendants, | ) |
| | ) |
| AON CORPORATION, | ) |
| Nominal Defendant. | ) |

## MEMORANDUM AND ORDER

Until recently, Aon Corporation and other insurance carriers and reinsurers enjoyed a lucrative source of additional income—contingent commissions obtained from underwriters. However, rather than obtaining the commissions from underwriters offering its clients the best deals, Aon allegedly obtained them from companies offering it the biggest commissions. After becoming the target of an investigation by New York attorney general Elliot Spitzer, Aon admitted accepting contingent commissions, agreed to stop, and set up a $190-million fund for affected policyholders. Aon has agreed to pay millions more to settle related claims.

After Aon's scheme came to light, shareholder Sylvia Piven filed this derivative action against members of Aon's board of directors, contending that they, among other things, breached their fiduciary duties. The defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) because Piven filed suit before giving them adequate time to respond to her pre-suit demand letter. Alternatively, the defendants move to stay the proceedings under *Colorado River* pending the outcome of a similar case in Illinois state court. For the reasons that follow, the defendants' motion to dismiss is GRANTED.

**Background**

The following facts are taken from Piven's complaint, and are deemed to be true. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 592 (7th Cir. 2006). Aon's contingent commission scheme first came under scrutiny in 1999 as a result of a suit filed in state court, *Daniel v. Aon Corp.*, No. 99 CH 11893, Circuit Court of Cook County, Illinois. In it, a class of insureds alleged that AON "received improper contingent commissions at the expense of and to the detriment of its clients." Although Aon did not disclose the existence of the lawsuit in its filings with the Securities and Exchange Commission until 2005, it nevertheless attracted the attention of attorney general Spitzer, who began investigating contingent commissions within the insurance industry. In October 2004, the *Wall Street Journal* reported that Aon was one of the subjects of Spitzer's investigation. Within days the value of its stock sunk 30%, followed by Aon's announcement on October 22, 2004, that it would no longer accept contingent commissions from underwriters.

The following month, Piven, on behalf of a trust that owns Aon stock, wrote to Aon making a pre-suit demand that the board "take the appropriate steps to provide for equitable and therapeutic relief, as well as retroactive damages, to remedy the breach of fiduciary duty, mismanagement and corporate waste described below." The Board considered Piven's demand at its January 2005 meeting, and advised her in writing that "outside law firms have been engaged to investigate, *inter alia*, the issues in your letter."

A short time later, Aon got hit with two lawsuits. The first was a derivative suit filed in February 2005 in state court, *Sherman v. Ryan*, 05 CH 03430, Circuit Court of Cook County, Illinois. It asserts claims similar to the ones raised in Piven's demand letter. The second suit was

filed in March 2005 by Spitzer, joined by other state attorneys general including Illinois'. Aon settled the Spitzer suit the day after it was filed. In addition to creating a $190-million fund for affected policyholders, the settlement required Aon to implement reforms, including a prohibition on contingent commissions and similar schemes. CEO Patrick Ryan also issued the following apology: "Aon . . . entered into contingent commission agreements and other arrangements that created conflicts of interest. I deeply regret that we took advantage of those conflicts. . . Such conduct was improper and I apologize for it."

Following the filing of those two suits, in May 2005 the board responded again to Piven's demand letter. This time, the board stated that it would devote its resources to defending itself in the *Sherman* suit rather than "conduct additional inquiry into the allegations raised in your letter." However, the board added that it would "monitor the progress of the *Sherman* litigation and will consider your letter at a later point in time, as circumstances warrant." Unsatisfied with the board's response, on July 14, 2005, Piven sent a second demand letter, this time to examine the corporate books and records. The request was denied.

Piven then filed this suit. In it, she alleges breach of fiduciary duty, abuse of control, gross negligence and mismanagement, waste of corporate assets, breach of contract, unjust enrichment, and violation of a Delaware statute that allows shareholders to review corporate books. The defendants responded with a motion to dismiss. They advance two main reasons for either dismissing or staying Piven's suit. First, they contend that the suit should be dismissed because it is premature. Specifically, they argue that Piven may not yet sue because the Aon board has not failed to respond to her demand letter. Alternatively, the defendants argue that the case should be stayed because the *Sherman* case is pending in Illinois state court, was filed before

this case, and raises almost identical issues. Because of the parallels between the cases, the defendants contend that the court should stay Piven's suit under the abstention doctrine set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

**Standard of Review**

In ruling on a motion to dismiss under Rule 12(b)(6), the court must assume the truth of the facts alleged, and must construe the allegations in the light most favorable to non-moving party. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). Dismissal is proper only if the plaintiff would be unable to prove any facts that would entitle her to relief. *Id.* The parties have applied Delaware law, so the court will too.

**Analysis**

Piven's suit is a derivative action, which permits a shareholder to enforce a corporate cause of action. *See Kamen v. Kemper Fin. Srvs., Inc.*, 500 U.S. 90, 96 (1991). It allows individual shareholders like Piven to protect the interests of the corporation from the "misfeasance and malfeasance" of the corporate directors. *Id.*

However, before filing a derivative action, the shareholder must make a written pre-suit demand on the corporation's board. *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000). The purpose of the demand requirement is to allow the corporation time to remedy the shareholder's complaints. *Id.* Once demand is made, the board must investigate the alleged wrongdoing and then decide upon an appropriate course of action. *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991).

To ensure compliance, Fed. R. Civ. P. 23.1 requires that the shareholder "allege . . . with particularity" the demand made and the board's failure to act. Fed. R. Civ. P. 23.1; *In re Abbott*

*Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 803-04 (7th Cir. 2003). The shareholder must also have afforded the board sufficient time to investigate the allegations and decide whether to bring suit or reject the demand. *Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985). Premature filing "frustrates the policy of Rule 23.1," and should result in dismissal of the suit without prejudice. *Recchion v. Kirby*, 637 F. Supp. at 1309, 1319 (W.D. Pa. 1986).

Courts determine what constitutes an adequate amount of time to respond on a case-by-case basis by examining the complexity of the issues presented as well as the surrounding circumstances. *Allison*, 604 F. Supp. at 1117; *Mozes v. Welch*, 638 F. Supp. 215, 220 (D. Conn. 1986). However, the board may not simply "brush off" the demand letter by responding that the allegations are under investigation. *Allison*, 604 F. Supp. at 1117. The board must have either actually investigated, or reasonably decided to delay an investigation. *Id.*

Whatever the board's decision, it is protected under the business judgment rule. *Levine*, 591 A.2d at 212. Under the business judgment rule, board members and directors are presumed to act on an informed basis in good faith, and in the honest belief that the action taken was in the best interests of the company. *In re Abbott Labs.*, 325 F.3d at 808. However, if a shareholder can establish that the board refused demand in the absence of due care, adequate information, or good faith, then the board's decision will not be afforded the protection of the business judgment rule. *Levine*, 591 A.2d at 212.

With all that in mind, the court concludes that Piven sued prematurely. The court disagrees with Piven's contention that she was entitled to sue because the Aon board "dropped" its investigation. It is true that after promising an investigation, the board changed course and

decided against investigating Piven's claims pending resolution of the *Sherman* case in state court. But it did not, as Piven now claims, state that it would *never* investigate her allegations. To the contrary, the board stated that it "*will* consider your letter at a later point in time, as circumstances warrant." (emphasis added).

Piven counters that Aon was obligated to investigate her claims immediately regardless of *Sherman*, but that contention is simply not true. A board's decision to delay responding to a demand in order to focus on related litigation is reasonable. For instance, in *Mozes v. Welch*, a shareholder made a demand three days after the corporation was indicted for overcharging the government. *Mozes*, 638 F. Supp. at 217. The corporation decided to respond to the demand two months after the conclusion of the criminal proceedings, which the court concluded was not a "brush-off" and was reasonable. *Id.* at 221. Likewise, in *MacCoumber v. Austin,* which presented circumstances eerily similar to those of the instant case, this court concluded that a board's decision to respond to a demand letter only after a parallel state court case was resolved was reasonable. *MacCounber v. Austin,* No. 03 CV 9405, 2004 WL 1745751, at **5 - 6 (N.D. Ill. 2004). In both cases, the courts dismissed the shareholders' derivative actions as premature. *MacCounber*, 2004 WL 1745751, at **5 - 6; *Mozes*, 638 F. Supp. at 222.

Piven attempts to distinguish *Mozes* and *MacCoumber* on two bases. First, she points out that in those cases, demand was made only after the related lawsuits had been filed. In contrast, Piven's demand preceded the filing of *Sherman*. But she never explains why that should make a difference, and offers no authority attaching any significance to the distinction. Nor does the court perceive any significance: Aon must devote resources to litigating *Sherman* regardless of whether it was filed before or after Piven's demand.

Second, Piven contends that unlike the boards in *Mozes* and *MacCoumber*, the Aon board has plenty of time to address her demand letter because *Sherman* is essentially dormant: the state court granted the defendants' motion to dismiss and no amended complaint was filed within the 28 days the court allowed. Though Piven asserts that the complaint in *Sherman* was never amended and that the case is consequently inactive, she has provided the court with nothing to support those assertions. Furthermore, the Cook County circuit court's electronic docket belies Piven's assertions: while it is difficult to tell from the docket exactly what activity has occurred, the court takes judicial notice of a flurry of entries since the September 2005 order granting the motion to dismiss, including activity as late as February 2006.

In sum, the court concludes that the board's decision to postpone its investigation is reasonable given that it is currently litigating related issues in state court. If the shareholder in *Sherman* prevails, investigation in this case will be unnecessary. If, however, the shareholder in *Sherman* is unable to press its claims, then Aon will be required to definitively respond to Piven's demand, but that time has not yet arrived. Until then, it would be unreasonable to require the board to expend Aon's resources unnecessarily.

Given the court's decision to grant the motion to dismiss without prejudice, it need not address the defendants' arguments that the case should be stayed under *Colorado River*.

## Conclusion

Accordingly, the court concludes that the board's decision to postpone its investigation until the state court proceedings in *Sherman* are resolved is not an unreasonable or untimely

delay, and therefore the defendants' motion [29-1] is GRANTED. Piven's complaint is dismissed without prejudice as being premature; she is granted leave to refile an amended complaint within two months after a decision in the state court litigation.

ENTER:

DATE: March 23, 2006

_____
Blanche M. Manning
United States District Judge